**C. Kelly CARPENTER, et al.,**
**Plaintiffs–Appellants,**

v.

**CITY & COUNTY OF DENVER,**
**COLORADO, Defendant–**
**Appellee.**

**No. 95–1245.**

United States Court of Appeals,
Tenth Circuit.

April 23, 1996.

Thomas B. Buescher, Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, Colorado, for Plaintiffs–Appellants.

Darlene M. Ebert, Assistant City Attorney (Daniel E. Muse, City Attorney, and Michelle M. Lucero, Assistant City Attorney, with her on the brief), Denver, Colorado, for Defendant–Appellee.

Before PORFILIO, BARRETT, and LUCERO, Circuit Judges.

JOHN C. PORFILIO, Circuit Judge.

In this appeal, we are asked to decide whether plaintiffs, lieutenants, captains, and division chiefs in the Denver Police Department, are salaried employees exempt from the overtime requirement of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207. This resolution pivots on our reading of 29 C.F.R. § 541.118(a), which states an employee whose salary is "subject to reduction because of variations in the quality or quantity of the work performed," is not exempt from payment of overtime. Because we read the language of the regulation to mean what it says, that the possibility of reduction defeats

salaried status, we conclude plaintiffs are not exempt from the FLSA's overtime requirement. We reverse.

## I.

█ Generally, the FLSA requires all employers, including state and local governments, to pay their employees a minimum wage for a 40–hour work week. 29 U.S.C. § 206. Hours worked over the 40–hour week must be compensated at an overtime rate of time and a half. 29 U.S.C. § 207. However, under 29 U.S.C. § 213(a)(1), payment of overtime does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity...." Congress delegated fleshing out this status to the Department of Labor (DOL), which devised a "short test" in 29 C.F.R. § 541.1, providing:

The term *"employee employed in a bona fide executive * * * capacity* ... shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed....

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly or closely related to the performance of the work described in paragraphs (a) through (d) ...; and

(f) Who is compensated for his services on a salary basis at a rate of not less than ... $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or· of a customarily recognized department or subdivision thereof, and in-cludes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section."

Because Congress expressly delegated supplying the definitions for its statutory scheme to DOL without accompanying guidance, the scope of our judicial review of those terms that constitute the exemption is quite narrow. Moreover, that review endows the agency's interpretation with substantial deference.

█ The employer bears the burden of showing "the employee fits 'plainly and unmistakenly within the exemption's terms'— under both the 'salary' test and the 'duties' test." *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 657 (10th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995), (quoting *Reich v. State of Wyoming*, 993 F.2d 739, 741 (10th Cir.1993)). Narrowly construing the exemption furthers the congressional goal in the FLSA to provide broad federal employment protection "to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959).

The Denver Revised Municipal Code reflects the FLSA design in § 42–63(b), which provides that members of the classified service of the police department shall receive time and a half for overtime hours. However, § 42–63(b)(1) states:

The provisions of this paragraph (b) shall not apply to police officers determined to be exempt from the Fair Labor Standards Act and who hold the rank of lieutenants of police, superintendent of radio engineers, division chief or captains of police, as fixed by Charter provision.

Exempt employees receive straight-time overtime compensation. The City classifies plaintiffs as falling within the executive exemption.

Challenging this status, plaintiffs sued the City for declaratory relief, contending they are not exempt from coverage of the FLSA overtime requirements and seeking back pay for each hour of overtime worked at time and a half for approximately three years from

1990 through 1993, in addition to liquidated damages authorized by the FLSA. Their complaint attacked their exempt status solely on the basis of the salary test, alleging the City's practice of fining certain plaintiffs for violations of minor safety rules and docking pay for military leave after 15 days defeated its claim to the exemption.[1] The City responded the executive, administrative, and professional exemptions barred plaintiffs' claims. The parties filed cross-motions for summary judgment, each side offering countervailing affidavits, plaintiffs' showing their salaries were "subject to" reduction when they are disciplined; and the City's contending that while compensatory leave time may be deducted from a plaintiff's leave bank, no actual deductions have ever been made from a plaintiff's salary.

Finding no factual issues in dispute, the district court concluded plaintiffs are exempt employees, rejecting the Second, Seventh, and District of Columbia Circuits' interpretation of § 541.118(a), and aligning itself with the Eighth, Eleventh, and Fifth Circuits which hold that absent an actual deduction from salary, the practice of offsetting leave with leave will not defeat an employee's exempt status. *McDonnell v. City of Omaha, Nebraska,* 999 F.2d 293, 297 (8th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800, 805 (11th Cir.1991); *York v. Wichita Falls,* 944 F.2d 236, 242 (5th Cir.1991) (issue of material fact precluded granting summary judgment on whether fire captains were paid on a salaried basis). Notwithstanding, the district court opined perhaps the matter should be directed to this court and lobbed the issue onto our side of the net "to see which way they want to go on policy."

■ Our return is conscribed by those portions of the pleadings, depositions, affidavits, and answers to interrogatories identified by the moving party which the nonmovant cannot overcome, *Celotex Corp. v. Catrett,*

477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), to establish the absence of a genuine issue of material fact. While the ultimate conclusion plaintiffs are not exempt employees is subject to our de novo review, the district court's factual findings are sheathed in the clearly erroneous standard. *Department of Labor v. City of Sapulpa, Okla.,* 30 F.3d 1285, 1287 (10th Cir.1994). The only material issue presented in this case is whether plaintiffs are paid on a salary basis as defined by DOL's regulations. Because our discussion of the administration of the City's disciplinary rules disposes of that issue, we need not address plaintiffs' other allegations about military leave and jury duty.

## II.

■ As a baseline, a salaried employee must be compensated "at a rate of not less than $250 per week," 29 C.F.R. § 541.1(f), a predetermined amount from which deductions may not be made for jury duty or military leave, § 541.118(a)(4), although the employer may offset any monies received from those activities from salary without losing the exemption. Deductions may be allowed for absences of "a day or more for personal reasons, other than sickness or accident," § 541.118(a)(2), without affecting salaried status. Nor do "[p]enalties imposed in good faith for infractions of safety rules of major significance," affect an employee's salaried status, § 541.118(a)(5), although "[s]afety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." § 541.118(a)(5). Moreover, any unpermitted deduction "will depend upon the facts in the particular case," a loss of the exemption not automatically necessitated. § 541.118(a)(6). Each of these permitted deductions preserves DOL's definition of salaried status, 29 C.F.R. § 541.118(a), which states:

---

1. While the employer must satisfy both the duties test and the salary test, as noted, plaintiffs raised only the salary test in their complaint. Although plaintiffs do not concede the employer has satisfied the duties test and contend on appeal the district court failed to make factual findings about plaintiffs' duties, given the state of the record before us, the salary test remains dispositive.

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not *subject to reduction* because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(emphasis and italics added). It is the phrase, "subject to reduction" which the parties challenge, each citing those factual allegations which serve its partisan interpretation.

Plaintiffs maintain salaried employees are paid a fixed amount for doing a job. That is, they "are paid on a job function basis," in contrast to non-salaried employees "whose compensation depends on the number of hours they put in. The opposite of payment on a salary basis, then, is payment on an hourly basis," they state, quoting *Hilbert v. District of Columbia, A Mun. Corp.*, 23 F.3d 429, 439 (D.C.Cir.1994) (Mikva, J. dissenting). Consequently, plaintiffs contend the City's express policies on disciplinary infractions, military leave, and leave for jury duty, which require "fining" the employee by deducting leave days from their "leave banks" or other leave offsets, render their fixed salaries "subject to reduction" because ultimately these contingent deductions reflect the "quality or quantity" of the work performed.

The City counters no plaintiff has had a reduction in salary as a consequence of any City policy or practice. Further, only a plaintiff's leave bank, the repository of all accumulated leave inuring to each plaintiff's position, is tapped, the City maintains; and, even then, only leave is offset against leave. In fact, the City argues, for Denver command officers who work more than the regularly assigned 152–hour schedule, the additional hours are more properly a "bonus fringe benefit payment," not overtime hours triggering exemption scrutiny. The City relies on *Aaron*, 54 F.3d at 658, which it offers as dispositive of this Circuit's position on the "subject to" language in the salaried basis test.

*Aaron*, however, did not adopt either line of Circuit reasoning. Instead, the court hinged its resolution to the prerequisite that even for "circuits requiring less than actual docking to preclude exemption, [they] require an *express* policy that an employee's actual pay will be reduced in the event that accrued leave is exhausted." *Id.* We write, therefore, on a clean slate, addressing the City's policies to decide, first, whether its disciplinary rules conform to DOL's directive, "safety rules of major significance;" and, second, whether the City's enforcement of these rules renders plaintiffs' salaries "subject to reduction."

### III.

The Denver Code § 42–28 gives the manager of safety:

the power to fine any police officer, member or employee for any misconduct or breach of discipline or violation of the rules and regulations of the police department and to collect the same or cause it to be withheld from any amount that is or may become due such person.

In addition, "All officers and members of the classified service of the police department shall be subject to such rules and regulations as shall be prescribed from time to time by the manager of safety and chief of police." The Denver Police Department Operations Manual catalogs an extensive list of rules spanning RR–105:

**Conduct Prejudicial:** Officers shall not engage in conduct prejudicial to the good order and police discipline of the department or conduct unbecoming an officer which may not specifically be set forth in department rules;

to RR–402:

**Careless Handling of Firearms:** Officers shall not carelessly handle a firearm at any

time.[2]

In his affidavit, James Collier, a captain in the Denver Police Department and from September 1991 to October 1992, the Chief of Police, stated many of these rules and regulations "do not deal with the safety of employees or the City's property," and identified portions of the Operations Manual which provide specific disciplinary penalties for infractions of the rules. He noted that during his tenure as Chief, "the preferred method of assessing disciplinary penalties [is] to fine a member with the loss of one or more days off." He explained,

> This method of disciplinary penalty is preferred by the Department because it does not have a negative impact on departmental manpower and is preferred by the officers because it does not directly reduce their paycheck during any pay period. Instead, what the officer can do at the officer's option, is work a day without receiving any compensation or forfeit an accrued day off so that the accrued day off cannot be used to take time off with pay in the future.

Captain Collier added that occasionally officers were actually suspended from duty without pay and described a case in which he, with the Manager of Safety's approval, suspended plaintiff Lieutenant Dale Canino for 60 days for departing from the truth in violation of RR–112. Plaintiff Canino was then demoted to the rank of sergeant upon his return to work.

Further, Captain Collier attested that each officer must keep track of all hours worked, receive authorization for additional hours, and seek approval by a supervisor for any absences. If the officer has leave time available, Captain Collier noted, the paycheck will reflect no deductions. However, if there is no available leave time, "the officer's pay will be reduced for the time absent." He asserted, while Chief of Police, he was never told the safety rules were to be read restrictively to mean he could only suspend command officers for violation of safety rules of major significance.

Aristedes W. Zavaras, Chief of Police from 1987 until 1991, stated in his affidavit he was never told about a restrictive reading of the City's safety provision and would "have opposed it because of my strong belief that maintaining order in the Department required at least uniform discipline across all ranks and, in some cases, potentially even higher discipline of higher ranking officers." He stated that during his tenure he suspended Lieutenant Buckley Stewart for violation of RR–105, conduct unbecoming an officer, which he "did not consider . . . as implicating safety issues at all." He added, had Lieutenant Stewart not complied with the conditions of his suspension, he would then have suspended him without pay for three days. He further attested he did not recall imposing any suspensions on police command officers which caused a loss of salary.

The record contains additional deposition testimony from managers of safety explaining the policy of "fining" officers for violations of departmental rules and the practice of satisfying the fine with leave or "save days."[3] Lieutenant Steven B. Cooper, who is in charge of the Denver Police Department's Personnel Bureau, stated in his affidavit that by City ordinance the additional time command officers work is not considered "overtime" but compensatory time, and the City preferred its payment by the "allowance of time off," not cash. He stated, "[i]t is only at the discretion of the Chief of Police that salary at the rate of time and one-half can be paid for overtime required pursuant to Denver's ordinances." He stated that no command officer at the rank of lieutenant or above had lost pay as a result of a disciplinary action for the violation of departmental rules and described how officers can flex their pay to avoid pairing time away with leave time in all instances. He further stated that officers exceeding the 15–day authorized time for military leave may use "ac-

---

**2.** Other rules of interest, to name only a few, are RR–112, **Departing from the Truth;** RR–134, **Use of Tobacco Products by Certain Officers;** RR–135, **Maintenance of Fitness Level by Certain Officers;** RR–202, **Soliciting or Accepting a Bribe;** and RR–306, **Unnecessary Force** in making arrests.

**3.** A "save day" is earned by working days off in earlier time periods.

crued vacation, save days, compensatory time, or other appropriate leave."

Although the plaintiffs rely on this record testimony to establish their predetermined salary has the potential to be reduced under terms not recognized by the DOL regulations, the City contends the same evidence illustrates that in actuality no plaintiff's salary has been reduced as a consequence of the imposition of its disciplinary or military leave policies. The City extols the importance of maintaining the good and moral order of its police force, refashioning many of these good conduct rules to implicate public safety as its ultimate disciplinary mission. Nevertheless, it concedes if an officer is demoted because of an infraction of a disciplinary rule, the officer's salary is reduced.

"Unfortunately, the FLSA regulations are not written to help promote discipline and public safety." *Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1341 (11th Cir.1994). In *Avery,* the City suspended two police lieutenants classified exempt from the overtime requirement, one for leaving the scene of a suicide and the other for using excessive force against an inmate. The Eleventh Circuit agreed with plaintiffs neither violation could be deemed an infraction of a safety rule of major significance. "That is how the regulations, which are concerned with the employer's property and the safety of fellow employees instead of with public safety, restrict the definition of 'safety rules of major significance.'" *Id.* The court observed, "Of course, the City may suspend employees without pay for other types of insubordination or misconduct, but the price for doing so is loss of its ability to treat those employees as executive, administrative, or professional employees exempt from overtime pay." *Id.*

We believe if we are to construe exceptions to the FLSA narrowly, giving substantial deference to DOL's interpretation of its own

rules, *International Ass'n of Fire Fighters, Local 2203 v. West Adams Cty. Fire Protection Dist.,* 877 F.2d 814, 817 (10th Cir.1989), we must conclude the City's express policy on discipline does not conform to DOL's parameters. Its "safety rules," in fact, are more often rules of behavior involving an officer's daily conduct on the force. Because the rules fall short, the City's punishing an errant officer by removing leave time from the officer's leave repository creates the potential for reducing pay. When leave is exhausted, the record makes clear a plaintiff's salary is "subject to reduction." That is, then, the quality of the officer's work may ultimately reduce the predetermined amount of salary the officer receives. Reading the regulations narrowly, we cannot say that employee is salaried.

■ Thus, we understand "subject to" in § 541.118(a) to mean the possibility and not the actuality of a reduction in pay removes an employee from exempt status. Consequently, we reject the City's revision that plaintiffs remain salaried employees because their salaries have not actually been reduced. We agree with the Seventh Circuit that "'[s]ubject to reduction' does not mean that a reduction was actually made. The plain meaning of the language suggests that it is enough that a deduction could have been made for an impermissible reason." *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.,* 990 F.2d 279, 286 (7th Cir.1993).[4]

This reading comports with the general definition of a salaried employee's being paid a predetermined amount unaffected by quality or quantity of work. As the Ninth Circuit stated in *Abshire v. County of Kern,* 908 F.2d 483, 487 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), "[e]ither pay is fixed and immutable, and not subject to such deductions, or it is

---

**4.** In *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.,* 990 F.2d 279 (7th Cir.1993), the hospital employer suspended a staff nurse for being rude, abrupt, and irritable to other staff members and a patient's visitor. The employer characterized this behavior as an unsafe nursing practice although she was also suspended for tardiness, rudeness, and personal appearance. Recognizing plaintiff's actions could not be cubby holed into the "safety rule of major significance" cate-

gory, the Seventh Circuit rejected the employer's effort to exempt plaintiff from the FLSA's overtime provision. The court found that her suspensions, which included salary reductions, affected the quality or quantity of her work. "This is inconsistent with the regulation's requirement of a salaried employee for the FLSA exemption and inconsistent with the interpretation's definition of a salaried employee." *Id.* at 285.

contingent." The regulations detail those specific instances permitting deductions from salary without a loss of the exemption, for example, § 541.118(a)(2) and (a)(3), and expressly limit discipline to "[p]enalties imposed in good faith for infractions of safety rules of major significance," § 541.118(a)(5). DOL's illustration of this rule is straightforward: conduct that could cause serious danger of property loss to an employer's physical plant or harm to other employees.

Surely, a police lieutenant's insubordination affects the quality of his work. However, it falls short of DOL's specification that quality implicates the essential reason for which the employee performs his job and quantity focuses on performing the job itself, not merely showing up.[5] Indeed, suspending an employee for three days or so for some sort of behavioral misconduct as this record reveals suggests "if an employer measures out discipline in the form of fractions of a weekly salary, the implication is that the employee is really being paid on an hourly basis." *Mueller v. Reich*, 54 F.3d 438, 443 (7th Cir.1995).

That the City has never, in fact, reduced a plaintiff's salary is not cognizable under § 541.118(a). Its express policy in § 42–28 of the Denver Code authorizes the manager of safety "to collect ... or cause to be withheld from any amount that is or may become due such person." That is the actual policy whether it is administered that way or differently. Moreover, as the court noted in *Michigan Ass'n of Gov. Emp. v. Michigan Dept. of Corr.*, 992 F.2d 82, 86 (6th Cir.1993):

First, this approach is more consistent with the regulatory language defining a salaried employee.... Second, focusing on the actual policy is more practical and realistic. Employees subject to reduction in pay will, of course, attempt to avoid those reductions by juggling schedules and sacrificing non-work opportunities. Simply because a reduction in pay has never been applied does not mean that the employee has not been affected by the policy subjecting the employee to pay reductions.

Furthermore, although several affiants indicated plaintiffs receive sufficient leave to continually bank, neither plaintiffs nor the City asserted that is was impossible to exhaust the leave bank, which would require the City's personnel officer to reduce an otherwise exempt employee's salary in conflict with that status.[6]

Consequently, if the City chooses to discipline a police lieutenant for inappropriate and offensive conduct, it may do so. That action, however, does not fit within DOL's definition of a "safety rule of major significance" and defeats the City's claim plaintiffs are salaried employees exempt from the payment of overtime. Of course, the City may change or enforce its departmental rules to conform to the DOL regulation. That is a matter best left to the City. At present, however, the departmental rules do not constitute safety rules of major significance and scuttle its exemption claim.

We, therefore, **REVERSE** the district court's grant of summary judgment and order the court to enter judgment in favor of plaintiffs. We **REMAND** for further proceedings on damages, including the possible availability of liquidated damages under the FLSA.

---

5. We do not address the no docking rules for partial day absences given DOL's amendment to § 541.118, 29 C.F.R. § 541.5d, which permits a public employer to offset certain partial day absences without jeopardizing the exempt status of its salaried employees.

6. We have no information in the record about what happens to the leave bank when plaintiff terminates his service to the police department. If, in fact, plaintiffs receive equivalent cash for the days stored, deducting days from that source would surely affect the ultimate salary received.